## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR 05-0526 RB |
| | ) | |
| STEWART TODD CORDER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's (Corder's) Motion to Suppress Evidence (Doc. 41), filed on February 14, 2006. On March 3, 2006, I held a hearing, received evidence, and heard arguments. Having considered the record, evidence, arguments of counsel, and being otherwise fully advised, I find that this motion should be denied.

## I. Facts.

On December 7, 2004, at about 11:30 a.m., Agent Antonio Cisneros, a police officer with the Pecos Valley Drug Task Force, received a telephone call from an anonymous woman. The caller informed Agent Cisneros that a man named "Todd" was selling methamphetamine from the back yard of a residence located at 713 N. Mesa Street in Carlsbad ("713 N. Mesa"). Based on his ten years of law enforcement experience in the Carlsbad area, Agent Cisneros knew that the address given by the caller was a documented drug house. The caller stated that "Todd" was working on a car in the back yard, near a public alley that runs behind the residence. The caller described "Todd" as a white male, with very short hair or a shaved head and a thin build.

Agent Cisneros informed his supervisor of the call. Agent Ramiro Martinez, a police officer with the Pecos Valley Drug Task Force, accompanied Agent Cisneros to the scene. Agents Cisneros and Martinez began surveillance of 713 N. Mesa at about 12:00 p.m. The residence at 713 N. Mesa faces East onto Mesa Street. (Gov. Ex. 1.) 713 N. Mesa is located immediately South of a restaurant on the Southwest corner of Mesa Street and Church Streets. Behind the back yard of 713 N. Mesa is an alley that runs parallel to Mesa Street and perpendicular to Church Street.

The agents set up surveillance in a school parking lot on the Northwest corner of the intersection of Church and Mesa Streets. From the school parking lot, the agents could see the front of 713 N. Mesa and the access to the alley from Church Street. Government's Exhibit 2 is a photograph of the relevant view from this vantage point. Within ten minutes, the agents observed two or three vehicles pull into the alley and leave within a few minutes. Based on the quick turnaround of the vehicles, the agents surmised that the vehicles were involved in drug trafficking.

In order to gain a better view of what was going on in the alley, the agents moved to a park directly across Church from the north alley entrance. From the park, the agents could see down the alley, including the access to the back yard of 713 N. Mesa. Government's Exhibit 3 is a photograph of the view from the vantage point in the school parking lot. The access to 713 N. Mesa is the sunlit area behind the shadow cast by the building with the large window. (Gov. Ex. 3.) Government's Exhibit 4 is a photograph of the same view with Agent Cisneros standing in the alley adjacent to the alley access to the back yard of 713 N. Mesa.

From the second vantage point, the agents watched as vehicles pulled into the alley, pulled out of view into the back yard of 713 N. Mesa, stayed a few minutes, pulled out, and drove away. Within an hour of moving to the second location, the agents observed eleven vehicles come and go

2

in this manner from the back yard of 713 N. Mesa.

After about an hour, the agents saw a woman in a red car leave the back yard of 713 N. Mesa. The car matched the description of a vehicle associated with "Todd" provided by the anonymous caller. The agents had not observed the red vehicle enter the property. Agents Cisneros and Martinez followed the woman in the red car to a convenience store at Lea and Wilshire, a location some blocks away from 713 N. Mesa. The agents made contact with the woman, who identified herself as Tausha Thompson. The anonymous caller had mentioned that a woman named Tausha Thompson was helping "Todd" sell methamphetamine.

The agents asked Thompson about the drug sales in the back yard of 713 N. Mesa. Thompson was very nervous and uneasy. The agents asked Thompson if they could search her car. Thompson asked if they had a warrant. The agents replied that they did not. Thompson refused consent to search the car and did not give the agents any information. After Carlsbad patrol officers arrived, Agents Cisneros and Martinez returned to the area of 713 N. Mesa.

Agents Cisneros and Martinez parked on the South side of Church, just East of the alley. The agents walked down the alley and made eye contact with a man as they approached the alley access to the back yard of 713 N. Mesa. The man, identified as Corder, matched the caller's description of "Todd." Corder was standing in the back yard, behind the trunk of a vehicle that was parked with the front half of the vehicle in the bay closest to the alley of a two-bay car port ("first bay"). The front of the vehicle was pointing South, into the car port. The back half of the vehicle was sticking out of the car port. A work bench in the first bay of the car port prevented a vehicle from being parked completely inside the car port. Items stored in the second bay prevented a vehicle from being parked in the second bay of the car port.

3

Government's Exhibit 5 is a photograph of the view from the alley into the back yard taken in April 2005. The blue tarp in Exhibit 5 is hanging on the first bay of the car port. The blue tarp did not cover the car port bay and the white gate was open on December 7, 2004. From the alley, the agents had an unobstructed view of Corder and the back half of the car in front of him.

The agents made eye contact with Corder. Agent Cisneros said "hey." Corder began to quickly walk away from the agents, to the Southeast, toward an area in the back yard adjacent to the driver's side of the vehicle. The agents announced "police" in loud voices and pulled out their badges, which they wore on chains around their necks. Corder began to run. The agents were dressed in street clothes and were not wearing masks. The agents did not draw their weapons or scream. The agents ran through the open white gate after Corder.

The agents caught up to Corder in the back yard a few feet to the North of the car port. The agents asked Corder if he was carrying any weapons. Corder said yes and tried to reach for his stomach area. The agents wrestled Corder to the ground. During the scuffle, the three men moved a few feet to the North. The agents secured Corder in the driveway area of the back yard. Corder had a loaded semi-automatic pistol in his front waistband. Agent Cisneros asked Corder if he had anything else that the agents should know about. Corder indicated that he had a knife in the lower cargo pockets of his shorts. The agents found a small black zippered pouch that contained a knife, seven small bags of methamphetamine, and $870.00 folded in increments of $100.00 on Corder's person. The agents did not search anything other than Corder.

Corder was in the back yard of 713 N. Mesa with the permission of the owner, Leslie Barnes. Corder, Thompson and Barnes were friends. Barnes allowed Corder to park two of his vehicles at her residence because he was fixing the vehicles up and he had no other place to work on them.

4

Barnes allowed Corder to store tools and vehicle parts in the car port. Barnes allowed Corder and Thompson to stay the night at 713 N. Mesa on several occasions. Corder did not pay rent to Barnes. Corder told Barnes that he would reimburse her for part of the utilities, but he never did.

Corder and Thompson had not spent the night of December 6, 2004 at the home because it was being painted. On December 7, 2004, Barnes had given Corder permission to take a shower inside the house and work on his cars in the back yard. On that day, the blue tarp did not cover the car port bays.

I find the testimony of Agents Cisneros and Martinez to be fully credible. I credit the testimony of Leslie Barnes. I find the testimony of Corder wholly lacking in credibility.

## II. Discussion.

Corder moves to suppress all evidence on the grounds that (1) Corder had a reasonable expectation of privacy in the curtilage surrounding 713 N. Mesa; and (2) the search was not justified by probable cause or exigent circumstances.

The Fourth Amendment[1] prohibits unreasonable searches and seizures by the Government. U.S. CONST. amend. IV. A search subject to Fourth Amendment protection occurs "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo*

---

[1] Corder argues that New Mexico law applies because the agents are state law enforcement officers and the case was initially filed in state court. "It is . . . well established in this circuit that in federal prosecutions the test of reasonableness in relation to the Fourth Amendment . . . must be determined by Federal law even though the police actions are those of state police officers. " *United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999). This is because "the exclusionary rule is only concerned with deterring [federal] Constitutional violations." *Id.* Because the case was brought in federal court, federal law applies.

*v. United States*, 533 U.S. 27, 33 (2001).  Corder contends that the agents violated his reasonable expectation of privacy in the curtilage of 713 N. Mesa.  The facts and the law do not support this position.

The Supreme Court has explained that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998); *see also United States v. Gordon*, 168 F.3d 1222, 1225-26 (10th Cir. 1999).  The relevant inquiry is whether the individual has a reasonable expectation of privacy in the premises searched.  *Id.*

Corder had been an overnight guest at the house in the past, but he did not spend the night there before his arrest.  Corder stored personal property and vehicles in and around the car port.  Corder was in the back yard with permission of Barnes.  Under these circumstances, Corder did not have a reasonable expectation of privacy in the back yard.

In any event, "[t]he Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares." *California v. Ciraolo*, 476 U.S. 207, 213 (1986).

From public vantage points, the agents observed activity consistent with drug trafficking coming and going from the back yard.  They observed Thompson leave the area and made contact with her, corroborating the informant's tip.  The agents walked down the alley and observed a man matching the description of "Todd" in the back yard.  The agents made eye contact with Corder and hailed him while they were in a public alley.  Corder walked away quickly.  When the agents identified themselves as police, Corder ran away from them.  The agents chased him and caught him in the back yard.

6

When they entered the back yard in pursuit of a suspected drug dealer, the agents had probable cause to believe that a crime was occurring in their presence. *See Illinois v. Gates*, 462 U.S. 213, 245 (1983) (noting that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity"). Moreover, the likelihood that the evidence would be destroyed if Corder successfully evaded them constituted sufficient exigent circumstances to enter the back yard and detain Corder. *United States v. Scroger*, 98 F.3d 1256, 1259 (10th Cir. 1997). Concerns for officer safety further justified the arrest. *United States v. Thomas*, 372 F.3d 1173, (10th Cir. 2004); *United States v. Maddox*, 388 F.3d 1356, 1366 n. 6 (10th Cir. 2004).

Corder argues that his arrest was impermissible because the agents intended to arrest him when they walked down the alley. This argument fails on both the law and the facts. As a legal matter, reasonable suspicion is an objective standard; the subjective intent of the officer is irrelevant so long as the circumstances, viewed objectively, justify that action. *Whren v. United States*, 517 U.S. 806, 813-14 (1996). As a factual matter, the agents intended to talk to Corder when they walked down the alley. They did not intend to arrest Corder until they corroborated the tip by observing that Corder matched the informant's description and Corder tried to evade them.

The agents walked down the alley in order to talk to Corder and further their investigation. The "knock and talk" strategy employed by the agents has been described as a "reasonable investigative tool" for purposes of "seeking to gain an occupant's consent to search." *United States v. Famiglietta*, Slip Copy, 2006 WL 148277 n4 (10th Cir. 2006) (quoting *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001)). Objectively viewed, the circumstances justified the decision of the agents to walk down the alley and talk to Corder in furtherance of their investigation.

Corder faults the agents for not obtaining a search warrant before making contact with him.

7

This argument "ignores long-standing and unequivocal Supreme Court precedent." *United States v. Pearson*, 203 F.3d 1243, 1269 (10th Cir. 2000). Thirty years ago the Supreme Court held that:

> Law enforcement officers may find it wise to seek arrest warrants where practicable to do so, and their judgments about probable cause may be more readily accepted where backed by a warrant issued by a magistrate. But we decline to transform this judicial preference into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause rather than to encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like.

*United States v. Watson*, 423 U.S. 411, 423-24 (1976). The agents were not required to obtain a search warrant before making contact with Corder.

**III. Conclusion.**

The actions of the agents did not violate the Fourth Amendment.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence, filed on February 14, 2006, is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STTES DISTRICT JUDGE**